UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL R. SANCHEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO, SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, and DAREN D. ALLBEE,<br><br>    Defendants. | No.  2:19-cv-01545-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Through this action, Plaintiff Crystal R. Sanchez ("Plaintiff") seeks to recover damages against the County of Sacramento ("County"), the Sacramento County Sheriff's Department ("SCSD"), and Deputy Daren D. Allbee ("Allbee") (collectively, "Defendants") for violations of various rights arising under both state and federal law.  Second Amended Compl., ECF No. 69 ("SAC").  Presently before the Court are three motions: (1) Defendants' Motion for Reconsideration, ECF No. 60; (2) Plaintiff's Motion to Continue Discovery Deadline, ECF No. 63; and (3) Defendants' Motion to Dismiss and Strike Plaintiff's SAC, ECF No. 70.  For the following reasons, Defendants' Motion for Reconsideration is DENIED, Plaintiff's Motion to Continue Discovery Deadline is

///

GRANTED, and Defendants' Motion to Dismiss and Strike is GRANTED in part and DENIED in part.[1]

## BACKGROUND

### A.  Factual Background[2]

Plaintiff is affiliated with several organizations whose mission is to assist homeless individuals.  For months prior to May 2019, Plaintiff was assisting homeless persons on an undeveloped lot on the 5700 block of Stockton Boulevard in Sacramento County.  Plaintiff alleges that she had come into contact on several occasions with Deputy Allbee during this time, including on May 1, 2019, when she was providing assistance to homeless persons at the Stockton Boulevard location.

The SAC alleges that Allbee had a custom of conducting suspicionless warrants checks of persons he encountered.  For example, Plaintiff alleges that Allbee learned of Plaintiff's homeless advocacy efforts on May 1, 2019, through a social media post made by Plaintiff and from there, Allbee conducted a suspicionless warrants search using Plaintiff's name.  From that search, Allbee obtained information about Plaintiff, including that she had "numerous contacts" with SCSD, had a suspended license, and had been cited numerous times for driving on a suspended license.  Allbee allegedly conducted suspicionless warrants searches of approximately five or six other persons suspected of demonstrating in support of homeless persons.

On May 17, 2019, Plaintiff heard that SCSD deputies were making arrests in the area, and she returned to the Stockton Boulevard location.  According to Plaintiff, Allbee called her by name, immediately handcuffed her, and accused her of driving without a valid California Driver's License.  Allbee then informed Plaintiff that he was going to have

---

[1] Because oral argument would not be of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Local Rule 230(g).

[2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's SAC.

2

her vehicle towed and impounded incident to her arrest, despite the presence of several individuals with valid driver's licenses who purportedly offered to take custody of the vehicle. Prior to the vehicle being towed, Allbee searched it and its contents, including Plaintiff's purse. Allbee also conducted a second warrants search using Plaintiff's information in order to verify that Plaintiff's license was still suspended. Plaintiff was then issued a citation by Allbee and her vehicle was towed and impounded. According to Plaintiff, to date she lacks the necessary funds to obtain release of her vehicle, which remains impounded.

### B.     Procedural History

Plaintiff initiated the present action on August 12, 2019. ECF No. 1.

> On February 6, 2020, the [assigned magistrate judge] granted in part and denied in part a motion to compel brought by [P]laintiff against the County, granting [P]laintiff's request for production [("RFP")] of defendant Officer Allbee's personnel files (RFP No. 7), subject to protective order. ECF No. 18 at 9. On March 27, 2020, the [magistrate judge] entered a pre-production stipulated protective order. ECF No. 24. On May 26, 2020, [P]laintiff brought a second motion to compel production of Officer Allbee's personnel records. ECF No. 31. Plaintiff's motion was granted, and [P]laintiff was awarded fees. ECF No. 38.

ECF No. 59, at 2 ("MJ Order"). On January 7, 2021, the Court granted Plaintiff's Motions to Amend the Complaint and Continue Discovery, extending the non-expert discovery deadline by six months. ECF No. 45. Plaintiff subsequently filed a First Amended Complaint ("FAC"), after which Defendants moved to strike certain elements and dismiss it in its entirety. ECF Nos. 46, 51.

Plaintiff filed a third Motion to Compel which sought to compel the County to produce documents responsive to RFP Nos. 48 and 50–60. ECF No. 56. On June 4, 2021, the magistrate judge granted in part and denied in part Plaintiff's Motion to Compel, ordering the County to produce documents in accordance with RFP Nos. 48 and 54–59. See generally MJ Order. Two weeks later, on June 18, 2021, Defendants filed the present Motion for Reconsideration of the magistrate judge's Order. Defs.' Mot.

///

3

1 Reconsideration, ECF No. 60.  On July 2, 2021, Plaintiff filed the present Motion to
2 Continue the Discovery Deadline.  Pl.'s Mot. Continue Discovery, ECF No. 63.
3 　　　On September 7, 2021, the Court granted in part and denied in part Defendants'
4 Motion to Dismiss and Strike the FAC.  ECF No. 68.  Plaintiffs filed the operative SAC on
5 September 27, 2021, which asserts the following claims:  (1) Retaliation in violation of
6 the First Amendment to the United States Constitution (first cause of action); (2) False
7 Detention/Arrest in violation of the Fourth Amendment (second cause of action);
8 (3) Unreasonable Search and Seizure in violation of the Fourth Amendment (third and
9 fourth causes of action); (4) False Detention/Arrest under the California Constitution (fifth
10 cause of action); (5) Unreasonable Search and Seizure under the California Constitution
11 (sixth and seventh causes of action); (6) violation of California's Bane Act, California Civil
12 Code § 52.1 (eighth cause of action); (7) False Imprisonment (ninth cause of action);
13 (8) Trespass (tenth cause of action); (9) Intentional Infliction of Emotional Distress
14 ("IIED") (eleventh cause of action); and (10) Negligence (twelfth cause of action).[3]
15 Defendants again move to dismiss portions and strike certain elements of Plaintiff's
16 SAC.
17
18 **STANDARDS**
19
20 **A.     Reconsideration of Magistrate Judge's Ruling**
21 　　　Pursuant to the Eastern District of California's Local Rule 303(f), the assigned
22 Judge shall review a Magistrate Judge's ruling under the "clearly erroneous or contrary
23 to law" standard set forth in 28 U.S.C. § 636(b)(1)(A).  See also Fed. R. Civ. P. 72(a).
24 Under this standard, the Court must accept the magistrate judge's decision unless it has
25 a "definite and firm conviction that a mistake has been committed."  Concrete Pipe &
26 Products of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal., 508 U.S. 602, 622
27 (1993).  If the Court believes the conclusions reached by the magistrate judge were at
28 　　　　　[3] Unlike the FAC, Sheriff Scott R. Jones is not listed as a defendant in the SAC.

4

least plausible, after considering the record in its entirety, the Court will not reverse even if convinced that it would have weighed the evidence differently. Phoenix Eng. & Supply Inc. v. Univ. Elec. Co., Inc., 104 F.3d 1137, 1141 (9th Cir. 1997).

### B.    Continue Discovery

Generally, the Court is required to enter a pretrial scheduling order within 90 days of service of the complaint. Fed. R. Civ. P. 16(b). The scheduling order "controls the course of the action" unless modified by the Court. Fed. R. Civ. P. 16(d). Orders entered before the final pretrial conference may be modified upon a showing of "good cause," Fed. R. Civ. P. 16(b), but orders following a final pretrial conference shall be modified only to prevent manifest injustice. Fed. R. Civ. P. 16(e); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992)

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. Johnson, 975 F.2d at 609. The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment); Id. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Johnson, 975 F.2d at 609. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. Id. (citing Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985)). If the moving party was not diligent, the Court's inquiry should end. Id.

### C.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6),[4] all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain

---

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

5

statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**D.   Motion to Strike Under Federal Rule of Civil Procedure 12(f)**

The Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a

6

1  12(f) motion to strike is to avoid the expenditure of time and money that must arise from
2  litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc.
3  v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (cleaned up). "Motions to strike
4  are generally disfavored and should not be granted unless the matter to be stricken
5  clearly could have no possible bearing on the subject of the litigation." Holmes Elec.
6  Document Processing, Inc., 966 F. Supp. 2d 925, 930 (N.D. Cal. 2013) (cleaned up).

      **E.**    **Leave to Amend**

8  A court granting a motion to dismiss a complaint must then decide whether to
9  grant leave to amend. Leave to amend should be "freely given" where there is no
10 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
11 to the opposing party by virtue of allowance of the amendment, [or] futility of [the]
12 amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
13 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
14 be considered when deciding whether to grant leave to amend). Not all of these factors
15 merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .
16 carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
17 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that
18 "the complaint could not be saved by any amendment." Intri-Plex Techs., Inc. v. Crest
19 Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d
20 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th
21 Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . .
22 constitutes an exercise in futility . . . .")).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

# ANALYSIS

## A. Defendants' Motion for Reconsideration

Defendants object to the magistrate judge's order that the County must produce documents in response to RFP Nos. 48 and 54–59. The Court will address each set of RFPs in turn.

### 1. RFP No. 48

Plaintiff first requests documents relating to "[t]he investigation of [Plaintiff's] government claim L1900633 (George Hills File No. 86374-35) – including: interviews conducted, statements received, correspondence sent or received, reports and memos prepared." MJ Order at 3. The magistrate judge first determined the County did not meet its burden in showing that these documents are protected by the attorney-client privilege:

> The County contends that "the communications and memorandum between the County's risk management and claims provider discusses privileged information regarding the assignment and investigation of Plaintiff's government claim which were prepared in anticipation of this instant litigation. Thus, these documents are protected under the attorney-client and/or work product doctrines." ECF No. 58 at 8. Defendant cites United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002), which explains that "[m]aterials, transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice are comparable to notes a client would make to prepare for a meeting with her lawyer—notes which could serve as an agenda or set of reminders about things to ask or tell counsel. It would undermine the purpose of the attorney-client privilege not to extend protection to such notes. Therefore, internal communications that reflect matters about which the client intends to seek legal advice are protected." Id. at 1077.
>
> The court disagrees with defendant that the documents at issue fall under the protection of attorney-client privilege. The ChevronTexaco case upon which the County relies discusses "internal communications" – defendant is seeking protection of documents exchanged outside its walls with non-attorneys. The County has not met its burden to show that these documents are protected by the attorney-client privilege.

Id. at 6.

8

Defendants contend that the magistrate judge's ruling is contrary to Ninth Circuit precedent given that all the correspondences at issue "were sent internally between Sacramento County employees, including County Counsel Peter C. Zilaff, as well as Sacramento County Claims Administrators," and that "these internal communications were regarding Plaintiff's claim assignment, and Porter Scott's representation of the County, in preparation of Plaintiff's imminent litigation against the County."  Defs.' Mot. Reconsideration, ECF No. 60, at 4–5 (citing ChevronTexaco, 241 F. Supp. 2d at 1077). To begin, Defendants have not set forth any specific Ninth Circuit precedent supporting their contention, only ChevronTexaco, a district court decision.  In any event, ChevronTexaco still requires that the primary purpose of the communications at issue, even those between nonlawyers, is to secure legal advice.  See ChevronTexaco, 241 F. Supp. 2d at 1076–77.  Defendants have not demonstrated that all of the communications were made primarily for the purpose of generating legal advice, especially since those communications were made regarding Plaintiff's government claim before it had been denied and Plaintiff had yet to file the present action.

Similarly, the magistrate judge also found that "the County fail[ed] to make a showing sufficient to establish that any documents are work-product protected" because "it is clear that the documents at issue would have been created whether or not this civil action was brought."  MJ Order at 6–7 ("They were prepared in the ordinary course of business, not 'because of' this litigation.").  Defendants argue that this finding was made in clear error "as these documents were made in confidence and for the purpose of anticipation of this litigation, after Plaintiff filed her Government claim against the County, and thus were created 'because of' the ensuing lawsuit filed by Plaintiff."  Defs.' Mot. Reconsideration, ECF No. 60, at 5.  However, these documents were made in response to and during the investigation of Plaintiff's government claim and, as stated above, were made before that claim had been denied or Plaintiff filed this lawsuit.  See Mollica v. Cnty. of Sacramento, No. 2:19-cv-02017-KJM-DB, 2022 WL 317004, at *6 (E.D. Cal. Feb. 2, 2022) ("Here, the nature and totality of the surrounding circumstances show the

9

1 documents were not prepared with an eye toward litigation.  The County was

2 investigating a claim in the ordinary course of its business.  No dispute had arisen.").

3        Lastly, Defendants take issue with the magistrate judge finding that in camera

4 review of the documents was unnecessary.  Defs.' Mot. Reconsideration, ECF No. 60,

5 at 5–6.  Given that Defendants did not satisfy their burdens in demonstrating that these

6 documents were privileged, the magistrate judge did not err in declining in camera

7 review.

### 2. RFP Nos. 54–59

9        Next, Plaintiff requests production of documents from six previously filed lawsuits

10 involving alleged constitutional violations by Allbee.  See MJ Order at 3–4.  Specifically,

11 Plaintiff requests documents from the "investigation of the complaint[s] against

12 [Allbee] . . . including:  formal or informal complaints, interviews conducted, statements

13 received, correspondence sent or received, video/audio recordings, reports and memos

14 prepared."  See id.  In granting Plaintiff's Motion to Compel with respect to these RFPs,

15 the magistrate judge stated as follows:

> Here, [P]laintiff argues that the prior cases are relevant to her claims against Allbee and the County because when "the same officer repeatedly violates the constitutional rights of a [municipality's] residents, and the [municipality] is on notice of these violations and fails to properly discipline the officer, by definition the [municipality] is deliberately indifferent to the likelihood that the officer will continue to commit constitutional violations in the future." Hayes v. Riley, No. 20-CV-04283-VC, 2020 WL 58165581, at *2 (N.D. Cal. Sept. 30, 2020).  The court agrees.  The County argues that none of the cases referenced resulted in an actual finding of unconstitutional conduct on the part of Officer Allbee.  ECF No. 58 at 21.  A review of the cases, however, shows that one of the cases (Bellinger v. Allbee, E.D. Cal. Case No. 2:02-cv-02335-LKK-GGH) appears to have settled, and one pro se case was dismissed for failure to prosecute (Wilkes v. Sacramento Sheriff, E.D. Cal. Case No. 2:02-cv-00952-MCE-DAD).  Such dismissals are not necessarily vindications of Officer Allbee's alleged conduct.  The defendant also argues that the cases are old, dating from 2002 – 2015.  ECF No. 58 at 21.  This argument cuts both ways and weighs in favor of allowing discovery.  The argument that these prior cases are stale is no more persuasive than the argument that cases dating so far back show that the County has been on notice of repeated

10

>claims of misconduct against Officer Allbee for nearly twenty years.
>
>Finally, the County asserts that production would be burdensome, but bases that argument on the assertion that the discovery is irrelevant. ECF No. 58 at 22. The court does not find the discovery facially disproportionate to the needs of this case. Nor does the court find the requests to be overly broad or untailored. Based on a review of the RFPs, the [FAC], and the parties' arguments, the court finds this discovery both relevant and proportional. To the extent that there are privileged or work-product protected responsive documents, those must be cataloged in a privilege log and the remainder of responsive documents must be produced. . . .

MJ Order at 8–9.

First, Defendants argue that the magistrate judge committed clear error by "simply conclud[ing] that the request for 'investigations of complaints' – which could be construed to encompass entire case files – was not 'overly broad or untailored' without ruling on Defendant's objections or providing any analysis as to how the requests [are] proportional to the needs of the case." Defs.' Mot. Reconsideration, ECF No. 60, at 7. In reaching her decision, the magistrate judge necessarily considered the County's objections and in doing so, the magistrate judge concluded that the County failed to demonstrate that RFP Nos. 54–59 are not proportional to the needs of the case.

Second, Defendants contend that the magistrate judge also committed clear error because Plaintiff "failed to provide anything to suggest that Deputy Allbee was found to have committed unconstitutional conduct, or that the County knew of some alleged misconduct related to these lawsuits and failed to stop it." Defs.' Mot. Reconsideration, ECF No. 60, at 7–8. Defendants argue that "none of these lawsuits concern Plaintiff or the instant case, where the allegations are entirely dissimilar to the claims at issue, and where there was no finding of unconstitutional conduct." Id. at 8. However, "[d]istrict courts addressing discovery-related disputes in cases involving Monell claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff only sued the individuals directly involved in the deprivation of his rights." Mollica v. Cnty. of Sacramento, No. 2:19-cv-

2017 KJM DB, 2021 WL 2417118, at *2 (E.D. Cal. June 14, 2021), reconsideration denied, 2022 WL 317004 (E.D. Cal. Feb. 2, 2022) (quoting Awalt v. Marketti, No. 11 C 6142, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012)); see also Hayes v. Riley, 525 F. Supp. 3d 1118, 1121 (N.D. Cal. 2020).  Thus, the magistrate judge did not err in finding these RFPs relevant and proportional.

In sum, the Court finds that the magistrate judge's order compelling the production of documents pursuant to RFP Nos. 48 and 54–59 was not made in clear error or contrary to law.  Accordingly, Defendants' Motion for Reconsideration is DENIED.[5]

### B.    Plaintiff's Motion to Continue Discovery Deadline

Plaintiff seeks to extend the current discovery deadline (which expired on July 7, 2021) by six months "in order to afford the opportunity for discovery and follow-up discovery of documents which have been compelled for production by the magistrate judge but which Defendants continue to withhold from production until the district court rules on a pending motion for reconsideration."  Pl.'s Mot. Continue Discovery, ECF No. 63-1, at 2.  Defendants oppose a continuance on grounds that Plaintiff failed to exercise diligence in seeking such a modification because she filed her third motion to compel on May 12, 2021, and set a hearing date for June 2, 2021, just shortly before the current discovery deadline expired.  See Defs.' Opp'n Mot. Continue Discovery, ECF No. 65, at 4–5.  However, that is only part of the timeline, for prior to filing the third motion to compel, Plaintiff served the RFPs in question on February 22, 2021; the County served objections and refused to produce documents on April 5, 2021, even after Plaintiff agreed to give Defendants a one-week extension of time to respond to the RFPs; Plaintiff sent a meet-and-confer letter on April 22, 2021; and the County responded to the letter and refused to produce the documents on May 4, 2021.  See

---

[5] Plaintiff seeks $2,550 for "expenses incurred in preparing this opposition [to the Motion for Reconsideration], including reasonable attorneys' fees, against the County and/or its counsel."  Pl.'s Opp'n Mot. Reconsideration, ECF No. 61, at 19.  However, the Court finds that reasonable people could disagree whether Defendants' motion was appropriate and thus Plaintiff's request for expenses is DENIED.  See Fed. R. Civ. P. 37(a)(5)(A)(ii).

12

Exs. G, H, I, J, Merin Decl., ECF No. 63-2, at 62–130; Ex. 1, Merin Supp. Decl., ECF No. 66-1, at 4.

Ultimately, the Court finds that Plaintiff has been diligent in seeking discovery. Furthermore, because Defendants' pending Motion for Reconsideration is just now being resolved, no party has moved for summary judgment, and no trial date has been set, good cause exists to extend the deadline to complete discovery. See Palacios Moralez v. Young, Case No. 1:16-cv-00282-AWI-BAM, 2017 WL 11477733, at *3 (E.D. Cal. Apr. 12, 2017) (finding good cause "given the previous period of uncertainty regarding the scope of discovery" in light of a pending motion for reconsideration). Accordingly, Plaintiff's Motion to Continue Discovery is GRANTED.

### C.  Defendants' Motion to Dismiss and Strike Plaintiff's SAC

#### 1.  Monell Liability

Municipalities and local officials cannot be vicariously liable for the conduct of their employees under § 1983, but rather are only "responsible for their own illegal acts." Connick v. Thompson, 563 U.S. 51, 60 (2011) (citing Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 665–83 (1978)). In other words, a municipality may only be liable where it individually caused a constitutional violation via "execution of government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694. To make that showing, a plaintiff must establish that: (1) she was deprived of her constitutional rights by the municipal entity and its employees acting under color of state law; (2) the defendants have customs or policies which demonstrate a conscious or deliberate disregard for constitutional rights; and (3) those policies were the driving force behind the alleged deprivation of the plaintiff's rights. Gant v. Cnty. of L.A., 772 F.3d 608, 617 (9th Cir. 2014).

Defendants again seek to dismiss all of Plaintiff's federal claims to the extent they are based on a Monell theory of liability. Plaintiff reasserts claims for Monell liability based on the County and SCSD's alleged records destruction policy; custom of

inadequate training, supervision, and discipline; and ratification.  See SAC ¶¶ 39–52, 58–66.  The Court previously dismissed these claims on grounds that "Plaintiff's provided cases were too attenuated to the constitutional causes of action proceeding from this Motion."  ECF No. 68, at 9.  Despite having been granted the opportunity to amend, the allegations in the SAC are materially the same or identical to those presented in the FAC.  It thus appears that further amendment would be futile as to these theories of Monell liability.

In addition to the previous theories, Plaintiff alleges a new theory of Monell liability that the County and SCSD have "a custom of permitting personnel to conduct suspicionless searches against persons, including running checks for wants and warrants through various law enforcement databases, without reasonable grounds to be suspicious that any crime has been committed or that there are outstanding wants or warrants."  SAC ¶ 53.  Defendants seek to dismiss this theory on two grounds, each of which the Court will address in turn.  See Defs.' Mot. Dismiss, ECF No. 70-1, at 8–11.

### a. Statute of Limitations

Defendants first contend that Plaintiff's new Monell theory is barred by the statute of limitations.  Since § 1983 does not contain a statute of limitations provision, federal courts borrow the forum state's statute of limitations for personal injury actions.  Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara, 344 F.3d 822, 828 (9th Cir. 2003) (citing Knox v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001)).  The relevant statute of limitations is therefore two years.  See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (citing Cal. Civ. Proc. Code § 335.1).  The parties agree that the statute of limitations here is two years but disagree as to the accrual date.  Plaintiff argues she "only learned of Deputy Allbee's custom of running suspicionless wants and warrants searches, including against Plaintiff, after Deputy Allbee's deposition was conducted on August 10, 2020."  Pl.'s Opp'n Mot. Dismiss, ECF No. 72, at 11 (emphasis in original).  Defendants counter that the alleged custom was known to Plaintiff when she filed her

previous complaints because "Plaintiff knew or reasonably should have known that Defendant Allbee accessed a law enforcement database (either that day or earlier) to confirm the status of her driver's license."[6]  Defs.' Reply ISO Mot. Dismiss, ECF No. 74, at 3 (citing SAC ¶ 24 (alleging that Allbee called Plaintiff "by name, immediately handcuffed her, and accused her of driving without a valid California Driver's License.")).

"Although California law determines the length of the limitations period, federal law determines when a civil rights claim accrues." Lukovsky v. City & Cnty. of S.F., 535 F.3d 1044, 1048 (9th Cir. 2008).  "[U]nder federal law, a claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Id. (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)).  While the Ninth Circuit has not expressly addressed when a Monell claim accrues, many district courts in this circuit have found that, because a Monell claim is based on an injury that was caused by a governmental policy, custom, or practice, "[i]t follows that Plaintiff's claim accrued when she 'knew or in the exercise of reasonable diligence should have known' of not only her injury, but also the [government]'s alleged wrongful policies—the cause of her injury for her Monell claim." Wilson v. Hays, 228 F. Supp. 3d 1100, 1112 (S.D. Cal. 2017) (citing Bonneau v. Centennial Sch. Dist. No. 28J, 666 F.3d 577, 581 (9th Cir. 2012)); see also Estate of Jackson v. City of Modesto, Case No. 1:21-CV-0415 AWI EPG, 2021 WL 4819604, at *9–10 (E.D. Cal. Oct. 14, 2021) (collecting cases).

Here, Plaintiff's Monell claim alleging violations of her First and Fourth Amendment rights accrues when she knew, or in the exercise of reasonable diligence should have known, not only of her injury, but also the County and SCSD's alleged wrongful custom in allowing officers to conduct suspicionless warrants checks.  The SAC alleges that Allbee "testified, under oath, that there were no criteria for conducting . . . a wants and warrants search against a person, without cause." SAC ¶ 54 (testifying that

---

[6] Defendants also assert that the alleged custom was known and accessible to Plaintiff when she filed her previous complaints because Plaintiff's counsel previously claimed a similar custom of suspicionless warrants checks against the County and SCSD in a 2017 lawsuit.  Defs.' Reply ISO Mot. Dismiss, ECF No. 74, at 3.  However, that is irrelevant in terms of what Plaintiff in this case knew or whether such a custom was at play in the present action.

15

he "'frequently' conducts suspicionless wants and warrants searches against persons by running identities through law enforcement databases, including for non-legitimate purposes such as '[f]inding out who they were'; 'what their history was'; and to 'see if they had any warrants, probation, patrol, sex assault – or sex registering information, that type of stuff.'"); see also id. ¶ 14 (stating that Allbee "would ask a person for their identity, including identification card or name, and then use the information he obtained to conduct probation, parole, wants, and warrants checks through law enforcement databases, in order to determine if there was a basis to search or arrest persons he encountered."). Plaintiff claims that she was only able to learn through later discovery, specifically Allbee's deposition testimony, "that Deputy Allbee's suspicionless wants and warrants search occurred." Pl.'s Opp'n Mot. Dismiss, ECF No. 72, at 12 (citing Ex. A, Merin Decl., ECF No. 72-1 (Allbee's deposition testimony dated August 10, 2020)). Defendants' argument that Plaintiff knew or reasonably should have known that Allbee accessed a law enforcement database prior to arresting Plaintiff "does not resolve the issue of when her Monell claim accrued." Wilson, 228 F. Supp. 3d at 1113.

Even if the Court were to find that the theory in question was time-barred, "[a]n otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading." ASARCO, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014). Relation back is proper when the amendment asserting a new or changed claim arises from the conduct, transaction or occurrence as in the original pleading, sharing common facts that put the adverse party on notice. ASARCO, 765 F.3d at 1004 (quotations omitted); see also Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c)'s relation back doctrine is liberally applied by courts. ASARCO, 765 F.3d at 1004. "Under Rule 15(c)'s liberal standard, a plaintiff need only plead the general conduct, transaction, or occurrence to preserve its claims against a defendant. The exact contours of those claims—the facts that will ultimately be alleged and the final scope of relief that will be sought—can and should be sorted out through later discovery and amendments to the pleadings." Id. at 1006. "Parties should not be discouraged from limiting their initial

1   pleadings to claims and defenses that have evidentiary support.  Nor should they fear
2   that doing so will foreclose them from amending their pleadings if new facts come to light
3   after further investigation and discovery." Id. at 1006.
4         Defendants argue that because the initial complaint and FAC focused exclusively
5   on Plaintiff and Allbee's interaction on May 17, 2019, Allbee's alleged conduct on May 1,
6   2019, does not arise from the same conduct, transaction, or occurrence.  Defs.' Mot.
7   Dismiss, ECF No. 70-1, at 9.  However, as explained by Plaintiff, "Deputy Allbee's
8   alleged justification for arresting and citing Plaintiff and seizing her property on May 17,
9   2019, was predicated on the May 1, 2019, suspicionless wants and warrants search."
10  Pl.'s Opp'n Mot. Dismiss, ECF No. 72, at 12.  Indeed, Plaintiff alleged in the prior
11  complaints that Allbee was not privy to the fact that Plaintiff was driving without a license
12  at the time of her arrest because he did not see her driving the vehicle.  See ECF
13  No. 68, at 5–6.  Accepting Plaintiff's allegations in the SAC as true for purposes of this
14  Motion, Allbee acquired information about Plaintiff's suspended license through a
15  suspicionless warrants search on May 1, 2019, and on May 17, 2019, Allbee arrested
16  Plaintiff for driving without a license based on that search even though he had not seen
17  Plaintiff driving the vehicle.  Plaintiff's new theory is thus related to the same conduct,
18  transaction, or occurrence referenced in the previous complaints, and Defendants
19  received the "fair notice . . . that Rule 15(c) requires."  ASARCO, 765 F.3d at 1006.
20  Ultimately, the Court finds that dismissing Plaintiff's Monell claim on statute of limitations
21  grounds is not appropriate.

### b.   Legal Sufficiency

24  Alternatively, Defendants argue that "Plaintiff's new claim based on a purported
25  custom or practice of the County and [SCSD] of permitting personnel to conduct wants
26  and warrants checks failed to sufficiently state a viable claim because accessing a
27  stored database does not implicate Plaintiff's Fourth Amendment right against
28  ///

17

unreasonable searches."[7]  Defs.' Reply ISO Mot. Dismiss, ECF No. 74, at 3; see also Defs.' Mot. Dismiss, ECF No. 70-1, at 10–11 (contending that "such 'wants and warrants' check does not implicate the Fourth Amendment.").  However, Defendants' policy or custom "need only cause [the] constitutional violation; it need not be unconstitutional per se."[8]  Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (quoting Jackson v. Gates, 975 F.2d 648, 654 (9th Cir. 1992)).

In sum, the Court finds that Plaintiff's Monell theory alleging a custom of suspicionless warrants searches is not time-barred and does not fail as a matter of law.  Accordingly, Defendants' Motion to Dismiss as to this theory of Monell liability is DENIED.  However, Plaintiff's reasserted theories of Monell liability based on the County and SCSD's alleged records destruction policy; custom of inadequate training, supervision, and discipline; and ratification are DISMISSED without leave to amend.

### 2.   IIED (Eleventh Claim)

An IIED claim consists of the following elements:

> (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress.

Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 300 (1988).  To be outrageous, the [c]onduct . . . must be so extreme as to exceed all bounds of that usually tolerated in a civilized community," Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982), and "[s]evere emotional distress [is] distress of such substantial quantity or enduring quality

---

[7] Defendants do not address Plaintiff's First Amendment retaliation cause of action in relation to this argument.

[8] In their Reply brief, Defendants do not appear to dispute this point of law but instead argue that "Plaintiff failed to allege[] facts to plausibly infer that any check of the database amounts to 'deliberate indifference' towards Plaintiff's constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment."  Defs.' Reply ISO Mot. Dismiss, ECF No. 74, at 4.  Because Defendants did not raise such an argument in their Motion to Dismiss, the Court "need not consider arguments raised for the first time in a reply brief."  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007).  Regardless, the Court finds that, at the pleading stage, Plaintiff has adequately alleged deliberate indifference to withstand dismissal under Rule 12(b)(6).  See SAC ¶ 56; J.M. by and through Rodriguez v. Cnty. of Stanislaus, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *6 (E.D. Cal. Nov. 7, 2018).

that no reasonable man in a civilized society should be expected to endure it," Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970).

Even if the Court found Defendants' conduct was outrageous, Plaintiff has again only provided a conclusory statement that she suffered severe emotional distress. SAC ¶ 133. It thus appears that further amendment would be futile and therefore, Plaintiff's IIED claim is DISMISSED without leave to amend.

### 3. Defendants' Motion to Strike

Defendants again move to strike a number of Plaintiff's allegations going to Monell liability. See Defs.' Mot. Strike, ECF No. 70-1, at 13–15 (requesting to strike paragraphs 43(a)–(f), 44(a)–(d), 45, 46, 60(a)–(c), and 65 of the SAC). The Court previously found that, in relation to Plaintiff's claims of Monell liability based on the County and SCSD's alleged records destruction policy; custom of inadequate training, supervision, and discipline; and ratification, "Plaintiff's provided cases are too attenuated to the constitutional causes of action" at issue. ECF No. 68, at 9. Now that Plaintiff's Monell claim is narrowed to a theory of suspicionless warrants searches, the Court finds that the cases and allegations in the aforementioned paragraphs "are not sufficiently similar to carry any weight in the Monell analysis here." Bagos v. Vallejo, No. 2:20-cv-00185-KJM-AC, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020); see SAC ¶¶ 43 (citing cases related to Allbee's "record of abuse against inmates during the time which he was employed at the jail facilities" which involve excessive force and racial discrimination), 44 (stating that Allbee "has been the repeated subject of investigations by [SCSD's] Internal Affairs Unit" and referencing three investigations involving claims of excessive force, improper contact and relations with a witness, and reckless operation of a vehicle resulting in an accident and property damage), 45–46 (stating that Allbee "was accused of rape by a woman in family court filings" and had his wages garnished on multiple occasions, but SCSD never conducted any independent investigation), 60 (citing cases related to the County and SCSD's "history of inadequate supervision and discipline of their personnel" involving physical beatings and an officer-involved

shooting), 65 (citing, in part, two news articles relating to Sheriff Scott R. Jones).  Such allegations may have been relevant to Plaintiff's previous theories of Monell liability, but with those theories now dismissed, the paragraphs in question are not sufficiently related to whether the County and SCSD had a custom of conducting suspcionless warrant searches.  Accordingly, Defendants' Motion to Strike is GRANTED.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration, ECF No. 60, is DENIED.  Plaintiff's Motion to Continue Discovery Deadline, ECF No. 63, is GRANTED.  Non-expert discovery shall be completed no later than six (6) months from the date this Memorandum and Order is electronically filed.  Defendants' Motion to Dismiss Plaintiff's SAC, ECF No. 70, is GRANTED without leave to amend as to the IIED claim and claims of Monell liability based on the County and SCSD's alleged records destruction policy; custom of inadequate training, supervision, and discipline; and ratification; but otherwise DENIED.  Lastly, Defendants' Motion to Strike, ECF No. 70, is GRANTED.  The following paragraphs are hereby STRICKEN from the SAC:  43(a)–(f), 44(a)–(d), 45, 46, 60(a)–(c), and 65.

IT IS SO ORDERED.

Dated:  March 22, 2022

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE