UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL R. SANCHEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-01545-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is Plaintiff Crystal R. Sanchez's ("Plaintiff") Motion for Summary Adjudication, ECF No. 83, which seeks resolution only "on the legal issue of whether [Defendant Deputy Daren D. Allbee's ('Allbee')] decision to impound Plaintiff's vehicle violated the Fourth Amendment to the U.S. Constitution and Article I, Section 13 of the California Constitution." Pl.'s Mem. ISO Mot. Summ. Adjudication, ECF No. 83-1, at 4 ("Pl.'s Mem."). Defendants Allbee, County of Sacramento, and Sacramento County Sheriff's Department (collectively, "Defendants") oppose the Motion. ECF No. 87 ("Defs.' Opp'n"). For the following reasons, Plaintiff's Motion is DENIED.[1]

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

1

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

1  not establish the absence or presence of a genuine dispute, or that an adverse party
2  cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The
3  opposing party must demonstrate that the fact in contention is material, i.e., a fact that
4  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,
5  Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and
6  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992).  The opposing party must also
7  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is
8  such that a reasonable jury could return a verdict for the nonmoving party." Anderson,
9  477 U.S. at 248.  In other words, the judge needs to answer the preliminary question
10 before the evidence is left to the jury of "not whether there is literally no evidence, but
11 whether there is any upon which a jury could properly proceed to find a verdict for the
12 party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251
13 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original).
14 As the Supreme Court explained, "[w]hen the moving party has carried its burden under
15 Rule [56(a)], its opponent must do more than simply show that there is some
16 metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  Therefore,
17 "[w]here the record taken as a whole could not lead a rational trier of fact to find for the
18 non-moving party, there is no 'genuine issue for trial.'" Id. at 587.
19     In resolving a summary judgment motion, the evidence of the opposing party is to
20 be believed, and all reasonable inferences that may be drawn from the facts placed
21 before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at
22 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's
23 obligation to produce a factual predicate from which the inference may be drawn.
24 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd,
25 810 F.2d 898 (9th Cir. 1987).
26 ///
27 ///
28 ///

# ANALYSIS[2]

"The impoundment of an automobile is a seizure within the meaning of the Fourth Amendment."  Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005); see Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 515 (9th Cir. 2018) (holding that "30-day impounds under [California Vehicle Code §] 14602.6 are seizures for Fourth Amendment purposes.").[3]  "[A] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment," and thus the question before this Court is "whether any specifically established and well-delineated exceptions to the warrant requirement apply that would make the impound[] reasonable."  Id. (citation and internal quotation marks omitted).

Because Allbee did not have a warrant to impound Plaintiff's vehicle, the parties invoke the community caretaking exception to the Fourth Amendment.  "In their 'community caretaking' function, police officers may impound vehicles that 'jeopardize public safety and the efficient movement of vehicular traffic.'"  Miranda, 429 F.3d at 864 (quoting South Dakota v. Opperman, 428 U.S. 364, 368–69 (1976)).  "Whether an impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft."  Miranda, 429 F.3d at 864 (citations omitted).

It is undisputed that Plaintiff did not have a valid driver's license or proof of insurance when her vehicle was impounded on May 17, 2019.  See Defs.' Response Pl.'s Statement of Undisputed Material Facts, ECF No. 87-1 ¶¶ 14–15, 17, 21–22; see also Ex. B, Merin Decl., ECF No. 83-3, at 34 (Allbee's written citation listing violations of

---

[2] The Court will only recount the arguments, evidence, and matters necessary to reach its decision here.  However, the Court has reviewed and considered the parties' briefings and submitted evidence in their entirety.

[3] Although Allbee impounded Plaintiff's vehicle pursuant to a state statute, "[t]he question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law.  The question is rather whether the [seizure] was reasonable under the Fourth Amendment."  Sibron v. New York, 392 U.S. 40, 61 (1968) (citation and internal quotation marks omitted).

California Vehicle Code § 14601.1(a) (driving when privilege revoked or suspended) and § 16028(a) (no proof of insurance)). "However, those facts alone do not automatically justify [an officer's] decision to impound" a vehicle. Long v. Gill, 981 F. Supp. 2d 966, 969 (D. Or. 2013); see also Miranda, 429 F.3d at 864 (stating that a driver's "citation for a non-criminal traffic violation . . . is not relevant except insofar as it affects the driver's ability to remove the vehicle from a location at which it jeopardizes the public safety or is at risk of loss."). To the extent Allbee believed that if the vehicle was not impounded, then "nothing would prohibit [Plaintiff] from driving the vehicle later that day," see Ex. A, Allbee Dep., ECF No. 83-3, at 28, the Ninth Circuit has held that "[t]he need to deter a driver's unlawful conduct is by itself insufficient to justify a tow under the 'caretaker' rationale." Miranda, 429 F.3d at 866.

Plaintiff's primary theory behind her Motion is that because there were specific licensed drivers present ready to take possession of her vehicle and Plaintiff authorized them to do so, Allbee's decision to impound her vehicle was unreasonable. See Pl.'s Mem., at 6 (citing Sandoval, 912 F.3d at 516 (holding that once an unlicensed driver is "able to provide a licensed driver who could take possession of the [vehicle], the . . . community caretaking function [is] discharged."));[4] Sanchez Decl., ECF No. 83-4 ¶¶ 3–4.

---

[4] Defendants posit that the Ninth Circuit's holding in Sandoval cannot be reconciled with the United States Supreme Court's decision in Colorado v. Bertine, 479 U.S. 367, 373–74 (1987). See Defs.' Opp'n, at 3–4 (asserting that Bertine "stated the Fourth Amendment does not require officers to give the vehicle owner an opportunity to make alternative arrangements to avoid the tow" and that "the Fourth Amendment does not require alternatives like presenting other drivers to avoid a tow"). However, the Court's decision is not so limited and instead suggests that a police officer is not required to exhaust alternatives before impounding a vehicle, especially if there is an urgent need to move it. See Bertine, 479 U.S. at 374 (stating that "while giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, . . . [t]he reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative less intrusive means.") (quoting Illinois v. Lafayette, 462 U.S. 640, 647 (1983)) (internal quotation marks omitted); see also Miranda, 429 F.3d at 865 n.6 ("An officer, acting within the scope of his or her community care-taking function, is not required to consider 'the existence of alternative less intrusive means' when the vehicle must in fact be moved to avoid the creation of a hazard or the continued unlawful operation of the vehicle.") (citing Bertine, 479 U.S. at 374). On the other hand, if an immediate and available alternative is present at the time that would eliminate the hazard or unlawful operation of the vehicle, then such alternative is at least relevant in determining whether the impound was reasonable under the Fourth Amendment. In Sandoval, the drivers did not have valid California driver's licenses, but their friends did and could have immediately driven the car away, thus ending their unlawful operation, i.e., driving without a valid license. See 912 F.3d at 513–14, 516–17. There were no facts in Bertine indicating that an immediate alternative arrangement was
///

Defendants respond that even if true, "the community caretaking function is served by not allowing an uninsured vehicle on the road" and that they "would be placed in a potential position for liability from other drivers or even from those who take possession if they were to get in an accident in Plaintiff's uninsured vehicle."[5]  Defs.' Opp'n, at 4.

      The Court finds a triable issue of fact exists as to whether it was reasonable for Allbee to impound the vehicle rather than release it to another licensed driver based on the vehicle being uninsured.  Plaintiff contends that "Defendants' argument amounts to nothing more than an insufficient 'general argument that such impounds are justified as a deterrent or penalty.'"  Pl.'s Reply ISO Mot. Summ. Adjudication, ECF No. 89, at 6 (citations omitted).  However, the issue is not just about preventing Plaintiff from driving her own vehicle without a valid license or insurance but also whether it is reasonable to let another licensed driver take possession and responsibility of and drive <u>another person's</u> uninsured vehicle.  See Miranda, 429 F.3d at 864 (stating that whether the impoundment is warranted under the community caretaking exception depends, in part, on "the police officers' duty to prevent it from creating a hazard to other drivers").  Furthermore, Plaintiff simply argues that other licensed drivers could have taken possession of the car but does not discuss whether those licensed drivers could have even legally driven Plaintiff's vehicle given that it is uninsured.  See Sandoval, 912 F.3d at 513–14, 516–17 (stating that the drivers only lacked valid licenses, not proof of insurance).

---

available at the time, such as the presence of other licensed drivers ready to take possession.  As a result, the Court finds the two decisions are reconcilable.

[5] Defendants also argue that Plaintiff has not provided "sufficient evidence that persons with valid driver's license[s] were present and/or that [] Deputy Allbee was aware of the same."  Defs.' Opp'n, at 3.  However, Allbee's statements in his declaration that he does not recall either "anyone presenting a valid driver's license to [him]" or "Plaintiff giving any particular person permission to take control of her vehicle," Allbee Decl., ECF No. 87-5 ¶¶ 5–6, are insufficient to overcome Plaintiff's own declaration and create a triable issue of fact.  See Fed. Elec. Comm'n v. Toledano, 317 F.3d 939, 950 (9th Cir. 2002) (stating that a "failure to remember and lack of knowledge are not sufficient to create a genuine dispute.").  Regardless, Defendants have made clear that even if there were other licensed drivers present, Allbee still would have impounded the vehicle.  See Ex. A, Allbee Dep., ECF No. 83-3, at 28 (stating that he "did not feel safe releasing the vehicle to <u>anybody else</u>") (emphasis added); Defs.' Opp'n, at 4 ("Even assuming a validly licensed driver [was] present and could have taken possession, the community care taking function would still be served by keeping [a] known uninsured vehicle off the street.").

1    Because a triable issue of fact exists based on the lack of insurance, there are
2 other factors the Court must consider in deciding whether the impound was
3 unreasonable.  As previously stated, "the decision to impound a vehicle after the driver
4 has violated a vehicle regulation must consider the location of the vehicle, and whether
5 the vehicle was actually 'impeding traffic or threatening public safety and convenience'
6 on the streets, such that impoundment was warranted."  Miranda, 429 F.3d at 865
7 (citation omitted).  It is undisputed that the event in question occurred in the vicinity of
8 Gordon Drive and Thurman Way off Stockton Boulevard in Sacramento, California.  See
9 Pl.'s Response Defs.' Separate Statement of Undisputed Facts, ECF No. 89-2 ¶¶ 3–4.
10 In her declaration, Plaintiff states that she "parked [her] vehicle legally on the street."
11 Sanchez Decl., ECF No. 83-4 ¶ 2; but see Ex. A, Allbee Dep., ECF No. 83-3, at 21–22
12 (unable to confirm whether Plaintiff "parked in a proper parking space" or if her vehicle
13 was wrongly positioned).  However, the word "legally" does not explain how or where the
14 vehicle was parked.  Additionally, Allbee states in his declaration that he is "generally
15 familiar" with the area in question and that "[i]n May 2019 it was experiencing a high
16 homeless issue and is a high crime area."  Allbee Decl., ECF No. 87-5 ¶ 2.  Based on
17 this knowledge, Allbee further declares that "had Plaintiff's vehicle been left there, it
18 would have been subject to risk of vandalism and theft."  Id. ¶ 4; see also Ex. 1, Not.
19 Errata to Allbee Decl., ECF No. 88, at 3 (image of Gordon Drive).  Plaintiff did not
20 discuss any of these contentions given her position that the presence of other licensed
21 drivers resolved any need for the impound.
22    Ultimately, the inquiry as to whether the impound of a vehicle is warranted under
23 the community caretaking exception is very fact intensive, as evidenced by the cases the
24 parties themselves rely on.  While the Court agrees with Plaintiff that the presence of
25 licensed drivers authorized to take possession of her vehicle is important, it is not
26 dispositive in this case; the lack of vehicle insurance, the location of the vehicle, how and
27 where the vehicle was parked, and whether the vehicle would be subject to vandalism or
28 theft if left there are all factors not considered or addressed by Plaintiff.  As such, the

7

Court cannot definitively say that Allbee's decision to impound Plaintiff's vehicle was unreasonable and thus violated the Fourth Amendment.[6]  Similarly, summary judgment on Plaintiff's California Constitution claim is not warranted given that it relies on the same reasoning as her Fourth Amendment cause of action.  Accordingly, Plaintiff's Motion for Summary Adjudication is DENIED in its entirety.[7]

## CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Adjudication, ECF No. 83, is DENIED without prejudice.  Because the Court finds denial is warranted based on the above analysis, Defendants' Objections to Plaintiff's Evidence Submitted in Support of Plaintiff's Motion, ECF No. 87-2, are DENIED as moot.

IT IS SO ORDERED.

Dated:  February 27, 2023

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that it would have reached the same conclusion had Defendants moved for summary judgment in their favor on this claim for the aforementioned reasons and because the presence of other licensed drivers ready to take possession of the vehicle raises a question as to whether it was reasonable to impound the vehicle rather than release it to one of them.

[7] The Court need not address Defendants' alternative arguments as to qualified immunity or whether Plaintiff's state law claim is barred under Yount v. City of Sacramento, 43 Cal. 4th 885 (2008).