UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL R. SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>Defendants. | No. 2:19-cv-01545-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Presently before the Court is Defendants County of Sacramento ("County"), Sacramento County Sheriff's Department ("SCSD"), and Deputy Daren D. Allbee's ("Allbee" and collectively with County and SCSD, "Defendants") Motion for Summary Judgment or Adjudication. ECF No. 91; see also Defs.' Mem. ISO Mot. Summ. J., ECF No. 91-1 ("Defs.' Mem."). This matter has been fully briefed. ECF Nos. 93 ("Pl.'s Opp'n"), 94 ("Defs.' Reply"). For the following reasons, Defendants' Motion is GRANTED in part and DENIED in part.[1]

///
///
///

---

[1] Because oral argument would not have been of material assistance, the Court declined to set a hearing and decides this matter on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[2]

At all relevant times, Plaintiff Crystal Sanchez's ("Plaintiff") driver's license had been suspended for 14 years and the temporary insurance she had on her vehicle had expired. It is also undisputed that the County has a policy governing vehicle towing. See Ex. C, Whitefleet Decl., ECF No. 91-3, at 29–40 (SCSD's General Order as to Vehicle Towing). On May 1, 2019, Plaintiff was protesting an encampment "sweep" at 5700 Stockton Boulevard in Sacramento, California. Plaintiff encountered and spoke to SCSD Deputy Allbee several times that day, but Plaintiff was never arrested or cited.

A few weeks later, on May 17, 2019, Plaintiff was across the street from the 5700 Stockton Boulevard location when she learned that someone was being arrested. Plaintiff then drove her vehicle (on her suspended license) and parked near Gordon Drive and Thurman Way. Plaintiff states that after she exited her vehicle, she "walked around the corner and was part way to where [Allbee's] vehicle was." Ex. 2, Pl.'s Dep., ECF No. 93-3, at 69. Allbee told Plaintiff that she was under arrest and according to Plaintiff, Allbee told dispatch that he "got one of the protestors." Next, Allbee handcuffed Plaintiff, verified through his computer that Plaintiff's license was still suspended, and began writing a citation. See Ex. 1, Allbee Dep., id., at 21. Afterwards, Allbee removed the handcuffs from Plaintiff. She claims that she had marks on her hand for a few hours, but she did not seek medical attention. Plaintiff also states that at this point, Allbee informed her that her vehicle was going to be towed. Allbee testified at his deposition that he "notified two supervisors and advised them that [he] was going to be towing [Plaintiff's] vehicle . . . pursuant to somebody driving on a suspended license." Id. at 24.

Allbee then drove his patrol vehicle to where Plaintiff's car was parked, and asked Plaintiff if she had proof of insurance. See id. at 22. Plaintiff responded that she did not, and Allbee added that to the citation. Allbee stated that he told Plaintiff at this time that

---

[2] Unless otherwise noted, the following recitation of undisputed facts is taken, primarily verbatim, from Defendants' Separate Statement of Undisputed Material Facts, Plaintiff's Statement of Disputed Facts, and the parties' responses thereto. ECF Nos. 91-2, 93-1, 93-2, 94-1, 94-2.

"her vehicle was going to be towed for driving on a suspended license[.]"  Id.  Allbee then searched her vehicle, including her purse located inside, which took a few minutes.  Plaintiff did not see Allbee take anything from her purse, and nothing was missing.  Finally, Plaintiff states that "several persons present offered to take possession of [her] vehicle," that they "informed Deputy Allbee that they had a valid driver's license[,]" and that Plaintiff "gave Deputy Allbee permission to turn [her] vehicle over to those persons[,]" but Allbee refused.  See Pl.'s Decl., ECF No. 93-4, ¶¶ 3–5.

Allbee ultimately issued Plaintiff a citation for driving on a suspended license in violation of California Vehicle Code § 14601.1(a) and failing to provide proof of valid vehicle insurance in violation of California Vehicle Code § 16028(a).  Plaintiff was subsequently convicted of said charges.

**STANDARD**

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment.  See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995).  The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

///

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure.

Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under

Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS[4]

### A. Second Claim: False Detention/Arrest in Violation of the Fourth Amendment

Defendants move for summary judgment on Plaintiff's Second Claim on grounds that (1) it is barred under Heck v. Humphrey, 512 U.S. 477 (1994) ("Heck"); (2) there was probable cause to support the citation for driving on a suspended license and failing to provide proof of valid vehicle insurance; and (3) Plaintiff cannot establish a derivative Monell claim against the County and SCSD. See Defs.' Mem., at 3–5, 6–7, 10. In her Opposition brief, Plaintiff states that she is not challenging the basis of her citation but instead this claim is "based on Allbee's unreasonable application of handcuffs." See Pl.'s Opp'n, at 8–10. Because Plaintiff is no longer challenging the citation and arrest themselves, summary judgment is GRANTED to the extent this claim is based on those theories.

---

[4] The Eleventh Claim for Intentional Infliction of Emotional Distress was previously dismissed without leave to amend. See ECF No. 75, at 18–19. The Court also dismissed Plaintiff's Monell claims based on the County and SCSD's alleged records destruction policy; custom of inadequate training, supervision, and discipline; and ratification. See id. at 13–18.

As for the handcuffing, Defendants argue that Plaintiff never challenged the manner of her arrest in the operative Second Amended Complaint ("SAC") or alleged an excessive force claim based on the use of handcuffs. See Defs.' Reply, at 5–6. The Court agrees. There is no mention of an excessive force claim in the SAC and the only references to handcuffs are as follows: (1) Allbee "called [Plaintiff] by name, immediately handcuffed her, and accused her of driving without a valid California Driver's License," and (2) under the state law false imprisonment claim, Plaintiff alleges that Allbee "intentionally deprived [Plaintiff] of her freedom of movement by use of handcuffs, which compelled her detention for an appreciable time, and she did not voluntarily consent to the restraint." SAC, ECF No. 69 ¶¶ 24, 121. Indeed, Plaintiff explicitly pled under the Second Claim that Albee "falsely detained/arrested [Plaintiff] without a warrant and without probable cause, in violation of the Fourth Amendment," id. ¶ 75, but as stated above, Plaintiff is no longer challenging the basis of her arrest and citation. Plaintiff never sought leave to amend to add an excessive force claim or any claim based on the use of handcuffs so she cannot rely on such an argument now. Accordingly, summary judgment is GRANTED as to the Second Claim in its entirety.

### B. Third and Fourth Claims: Unreasonable Search and Seizure in Violation of the Fourth Amendment

#### 1. Qualified Immunity

Defendants also move for summary judgment on Plaintiff's Third and Fourth Claims on the basis that Allbee is entitled to qualified immunity for the tow of Plaintiff's vehicle and inventory search of the vehicle's contents, including Plaintiff's purse. See Defs.' Mem., at 7–10. "Qualified immunity shields government officials from civil liability unless a plaintiff establishes that: (1) the official violated a constitutional right; and (2) that right was 'clearly established' at the time of the challenged conduct, such that 'every reasonable official' would have understood that what he is doing violates that right." Morales v. Fry, 873 F.3d 817, 821 (9th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The Court may address these prongs in either order. See Pearson v.

6

Callahan, 555 U.S. 223, 236 (2009). On summary judgment, the Court "examine[s] the facts in the light most favorable to the non-moving party[,]" and "[i]f genuine issues of material fact prevent a determination of qualified immunity, the case must proceed to trial." Thompson v. Rahr, 885 F.3d 582, 586 (9th Cir. 2016).

Assuming the tow and inventory search[5] of Plaintiff's vehicle all violated the Fourth Amendment,[6] Defendants argue that there was no clearly established law at the time of the events in question that makes any of it unlawful. See Defs.' Mem., at 7, 9, 10.

> Qualified immunity applies when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. White v. Pauly, . . . 580 U.S. 73, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017). Qualified immunity may apply regardless of whether the officer makes a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. [Pearson, 555 U.S. at 231]. . . . "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. See [District of Columbia v.] Wesby, [583 U.S. 48,] 138 S. Ct. [577,] 589 [(2018)]; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir. 2018). This is a "demanding standard" that protects "all but the plainly incompetent or those who knowingly violate the law." Wesby, 138 S. Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). To be "clearly established," a rule must be dictated by controlling authority or by a robust consensus of cases of persuasive authority. Id.; see also Perez v. City of Roseville, 882 F.3d 843, 856–57 (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the "clearly established" prong of qualified immunity). In

---

[5] The parties seemingly agree that an officer may conduct an inventory search of a vehicle prior to a lawful impound. See Defs.' Mem., at 9–10; Pl.'s Opp'n, at 11–12 (arguing that "because Allbee's seizure in towing the vehicle was unlawful, . . . his search of the vehicle and its contents was also unlawful."). Thus, whether Allbee is entitled to qualified immunity on the inventory search hinges on the tow and impound analysis.

[6] In its Memorandum and Order denying Plaintiff's Motion for Summary Adjudication, which is incorporated by reference herein, the Court noted that there were triable issues of fact as to whether Allbee's decision to tow Plaintiff's vehicle was unreasonable and thus violated the Fourth Amendment, and stated that it "would have reached the same conclusion had Defendants moved for summary judgment in their favor on this claim . . ." See ECF No. 90, at 7–8 & n.6. However, the existence of a constitutional violation is only one part of the qualified immunity analysis and pursuant to that analysis, Defendants are proceeding under the premise that even if Allbee's conduct violated the Fourth Amendment, he would still be entitled to qualified immunity because there is no clearly established law. Therefore, the Court assumes, for purposes of qualified immunity, that Plaintiff's Fourth Amendment constitutional rights were violated.

> examining whether a rule/right is clearly established, courts are to define the law to a "high degree of specificity," and not "at a high level of generality." Wesby, 138 S. Ct. at 590. The key question is "whether the violative nature of the particular conduct is clearly established" in the specific context of the case. Vos, 892 F.3d at 1035 (quoting Mullenix v. Luna, 577 U.S. 7, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)). Although it is not necessary to identify a case that it is "directly on point," generally the plaintiff needs to identify a case where an officer acting under similar circumstances was held to have violated a federal right. Rivas-Villegas v. Cortesluna, . . . 142 S. Ct. 4, 8, 211 L. Ed. 2d 164 (2021); Wesby, 138 S. Ct. at 577; Vos, 892 F.3d at 1035; Felarca v. Birgeneau, 891 F.3d 809, 822 (9th Cir. 2018). Whether a constitutional right was violated is generally a question of fact for the jury, while whether a right was clearly established is a question of law for the judge. Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).

Perez v. City of Fresno, 591 F. Supp. 3d 725, 750 (E.D. Cal. 2022).

Plaintiff relies, in part, on the Ninth Circuit's decision in Sandoval v. County of Sonoma ("Sandoval"), which held that once an unlicensed driver is "able to provide a licensed driver who could take possession of the [vehicle], the . . . community caretaking function [is] discharged." 912 F.3d 509, 516 (9th Cir. 2018). But Sandoval, as Plaintiff acknowledges, did not involve a lack of vehicle insurance. Although Plaintiff need not identify a case that is directly on point, there is a question as to whether another licensed driver "could have even legally driven Plaintiff's vehicle given that it is uninsured," something that was not raised in Sandoval. See ECF No. 90, at 6.

Plaintiff next states that "the Ninth Circuit has found the impoundment of a vehicle for driving without a valid license and for not having car insurance constitutes an unlawful seizure under the Fourth Amendment, where the location of the vehicle does not create any need for the police to protect the vehicle or to avoid a hazard to other drivers." Pl.'s Opp'n, at 11 (quoting Ferguson v. Baker, 773 F. App'x 991, 992 (9th Cir. July 23, 2019) ("Ferguson")). In Ferguson, the Ninth Circuit, in part, reversed the district court's granting of the defendants' motion to dismiss the plaintiff's Fourth Amendment unlawful seizure claim because the plaintiff "alleged that his vehicle was impounded after he was cited for driving without a valid license and for not having car insurance, even

///

though the vehicle was parked 200 yards from [the plaintiff's] home and [the plaintiff] offered to have a family member retrieve the vehicle for him."[7]  773 F. App'x at 992.

Plaintiff's reliance on Ferguson raises a few issues, the first one being that "memorandum dispositions do not establish law."  Hines v. Youseff, 914 F.3d 1218, 1230 (9th Cir. 2019) ("They are, at best, persuasive authority.").[8]  In any event, Ferguson did not hold that a police officer violates the Fourth Amendment by towing and searching a vehicle based on a citation for driving on a suspended license and no proof of vehicle insurance despite the presence of another licensed driver ready to take possession of the vehicle.  The two-paragraph memorandum disposition simply found that the plaintiff adequately alleged a Fourth Amendment claim related to the impound of his vehicle and remanded the case back to the district court for further proceedings.  See 773 F. App'x at 992.  Lastly, the facts in Ferguson are distinguishable given that the plaintiff's vehicle was parked close to his home and that the Ninth Circuit has found that the "community caretaking rationale [does] not justify the impoundment of an unlicensed driver's car which was legally parked in a residential area . . ."  See id. (citing United States v. Caseres, 533 F.3d 1064, 1075 (9th Cir. 2008)).  Here, there is nothing in the evidentiary record showing that Plaintiff's vehicle was parked close to her home let alone in a residential area.  See Ex. 1, Not. Errata to Allbee Decl., ECF No. 88, at 3 (image of Gordon Drive).

---

[7] The tow and inventory search of Plaintiff's vehicle occurred on May 17, 2019, and Ferguson was decided on July 23, 2019.  Courts may consider later-decided cases to determine whether the conduct at issue violated clearly established law.  See Tan Lam v. City of Los Banos, 976 F.3d 986, 1001–02 (9th Cir. 2020) ("When a case involves analogous conduct that occurred around the same time as the underlying incident . . ., and the case holds that the conduct at issue there violated clearly established law, then that case may indicate that the claim for qualified immunity . . . should likewise be rejected.").

[8] Plaintiff cites Sorrels v. McKee, 290 F.3d 965, 971 (9th Cir. 2002) ("Sorrels"), for the proposition that "an unpublished Ninth Circuit decision . . . 'may inform [the] qualified immunity analysis.'"  Pl.'s Opp'n, at 11 n.2.  However, Sorrels was referring to unpublished district court decisions, and the Ninth Circuit has distinguished reliance on both in the qualified immunity context.  See Hines, 914 F.3d at 1230 (stating that "memorandum dispositions do not establish law[,]" whereas "unpublished district court decisions 'may inform [the] qualified immunity analysis.'").  Regardless, Sorrels even noted that "it will be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only."  290 F.3d at 971.

9

Ultimately, Plaintiff fails to present "a case where an officer acting under similar circumstances was held to have violated a federal right." See Rivas-Villegas, 142 S. Ct. at 8. The Court agrees with Defendants that there is no clearly established law and thus Allbee is entitled to qualified immunity. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to the Third and Fourth Claims against him.

### 2. Monell Liability

In seeking summary judgment on the derivative Monell claim, Defendants "submit that not only can Plaintiff not prove an underlying violation of the . . . Fourth Amendment, but also she cannot prove that any policy was the moving force behind any claimed violations, nor any custom or practice of inaction in terms of . . . the tow/impound of the vehicle or search of the vehicle and its contents."[9] Defs.' Mem., at 10. Plaintiff counters that whether a policy was the moving force behind the alleged violations is a question for the jury, and any alleged custom or practice of inaction is supported by SCSD's policies. See Pl.'s Opp'n, at 12. However, this Court previously dismissed without leave to amend Plaintiff's Monell claims based on the County and SCSD's alleged records destruction policy; custom of inadequate training, supervision, and discipline; and ratification of Allbee's conduct. See ECF No. 75, at 13–18. The only surviving Monell claim is based on an alleged custom of suspicionless warrants searches, but that does not encompass the County's policy of vehicle towing.[10] Accordingly, Defendants' Motion is GRANTED as to the derivative Monell claims.

### C. First Claim: Retaliation in Violation of the First Amendment

Similar to the Second Claim above, Defendants seek summary judgment on Plaintiff's First Claim on grounds that (1) it is barred under Heck; (2) there was probable

---

[9] Because the Court found that there was no clearly established law, and assumed for purposes of qualified immunity that there was a Fourth Amendment violation, it did not actually reach the merits of the Fourth Amendment claims. Indeed, the Court previously found triable issues of fact as to whether it was reasonable to tow Plaintiff's vehicle based on arguments and evidence not cited by any of the parties in the current round of briefing. See ECF No. 90, at 4–8 & n.6.

[10] Given Plaintiff's concession that there was probable cause to support her arrest and citation, this theory now seems irrelevant.

10

cause to support the citation for driving on a suspended license and failing to provide proof of valid vehicle insurance; and (3) Plaintiff cannot establish a derivative Monell claim against the County and SCSD. See Defs.' Mem., at 3–5, 6–7, 10. Plaintiff again states in her Opposition brief that she is not challenging the basis for the citation but rather "Allbee's handcuffing, towing, and search of the vehicle." See Pl.'s Opp'n, at 12–13. To the extent this cause of action is based on the arrest, citation, or handcuffing, it fails for the same reasons discussed above. See supra Part A.

However, Defendants do not explicitly address the retaliation claim in terms of the tow and search of the vehicle but seemingly rely on their qualified immunity arguments instead. See Defs.' Mem., at 7 ("Deputy Allbee is entitled to qualified immunity for any seizure of the vehicle and any inventory search of property as to any claims asserted pursuant to 42 U.S.C. section 1983.") (emphasis added). Even after Plaintiff stated in her Opposition brief that her retaliation claim is based, in part, on the tow and search of her vehicle, Defendants still failed to address this specific contention in their Reply. See Defs.' Reply, at 3–4 (reiterating that Sandoval and Ferguson do not meet the clearly established standard). None of the parties discuss whether the elements of a First Amendment retaliation claim have been met[11] or whether there is clearly established law demonstrating that the tow and search of the vehicle in this case violated the First Amendment. Just because Allbee is entitled to qualified immunity on the Fourth Amendment claims does not automatically mean that he is entitled to the same on the First Amendment claim. See Ariz. Students' Ass'n v. Ariz. Bd. of Regents, 824 F.3d 858, 869 (9th Cir. 2016) ("Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment.") (citation omitted); see also Johnson v. City of Atwater, No. 1:16-CV-1636

///

---

[11] Those elements are: (1) the plaintiff "engaged in constitutionally protected activity; (2) as a result, [the plaintiff] was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." Ballentine v. Tucker, 28 F.4th 54, 61 (9th Cir. 2022) (quoting Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010)).

AWI SAB, 2018 WL 534038, at *11 (E.D. Cal. Jan. 24, 2018) (collecting cases). Accordingly, this claim must go forward.

However, the same does not hold true for the derivative Monell claim. As previously stated, the only viable Monell theory is one based on suspicionless warrants searches. There is nothing in the SAC or the present record demonstrating, let alone alleging, that the County and SCSD have a policy or custom of allowing retaliatory tows and searches of vehicles. See supra Part B.2; Cotton v. Cnty. of San Bernardino, No. EDCV 18-2343-VAP (AGR), 2020 WL 5900154, at *8 (C.D. Cal. Sept. 1, 2020). Ultimately, because Defendants did not raise a specific challenge to the First Amendment retaliation claim with regards to the tow and search of the vehicle, their Motion for Summary Judgment is DENIED as to their retaliation claim against Allbee for the tow and search of the vehicle but GRANTED as to both the claim against Allbee for handcuffing and the derivative Monell claim.

### D. Fifth and Ninth Claims: False Detention/Arrest in Violation of the Article I, § 13, of the California Constitution and False Imprisonment

Defendants seek summary judgment on Plaintiff's Fifth and Ninth Claims on grounds that (1) they are barred under Yount v. City of Sacramento, 43 Cal. 4th 885 (2008) ("Yount"); and (2) there was probable to support the citation. See Defs.' Mem., at 6–7, 18. In her Opposition brief, Plaintiff states that she is not challenging the basis of her citation but instead these claims are "based on Allbee's unreasonable application of handcuffs while issuing a traffic citation." Pl.'s Opp'n, at 13, 18. However, as previously discussed, Plaintiff never based any of her claims in the SAC on the use of handcuffs and the Court declines to consider any such arguments now. See supra Part A. Furthermore, because Plaintiff is not challenging the basis of her citation or arrest, the Court need not address whether Yount applies. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to these claims.

///

///


### E. Sixth and Seventh Claims: Unreasonable Search and Seizure in Violation of Article I, § 13, of the California Constitution

To the extent Defendants move for summary judgment on the Sixth Claim on the basis that it is barred by Yount, the Court declines to reach the merits of such an argument for reasons set forth above. See supra Part D. Next, Defendants argue that summary judgment is warranted on these claims because various California Vehicle Code provisions "provide Deputy Allbee with the statutory, standardized discretion to tow the vehicle, where the driver is both unlicensed and uninsured," and "Plaintiff cannot establish the tow and search [were] not accomplished without specific policies in place, or for an improper purpose." See Defs.' Mem., at 10–12.

> Both the "Fourth Amendment to the United States Constitution and article I, section 13 of the California Constitution proscribe seizures of persons, even brief investigative detentions, that are unreasonable." People v. Britton, 91 Cal. App. 4th 1112, 1118, 111 Cal. Rptr. 2d 199 (2001) (emphasis removed). California's constitutional ban on unreasonable searches and seizures is "similar" to the Fourth Amendment's prohibition on unreasonable searches and seizures. People v. Celis, 33 Cal. 4th 667, 673, 16 Cal. Rptr. 3d 85, 93 P.3d 1027 (2004). The "United States Constitution defines the minimum protection provided under Article 1, § 13 of the California Constitution." Craft v. County of San Bernardino, 468 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006). Thus, it is appropriate to consider Fourth Amendment jurisprudence in analyzing a claim that is based on a purported violation of California's similar constitutional provision. See, e.g., Wood v. Emmerson, 155 Cal. App. 4th 1506, 1514, 1526, 66 Cal. Rptr. 3d 847 (2007).

Barsamian v. City of Kingsburg, 597 F. Supp. 2d 1054, 1065 (E.D. Cal. 2009). "Statutes authorizing impounding under various circumstances may constitute a standardized policy guiding officers' discretion . . ., though statutory authorization does not, in and of itself, determine the constitutional reasonableness of the seizure . . ." Blakes v. Superior Ct., 72 Cal. App. 5th 904, 913 (2021) (citing People v. Torres, 188 Cal. App. 4th 775, 787 (2010)) (internal quotation marks omitted).

Like the federal Fourth Amendment analysis, the issue under the derivative state law claims is whether the tow and inventory search of Plaintiff's vehicle were reasonable. Statutory authorization alone does not resolve this issue, and as previously stated, the

parties dispute whether those three actions were reasonable under the present circumstances.  See ECF No. 90, at 4–8 & n.6.  Accordingly, Defendants' Motion is DENIED as to these claims.

**F.     Eighth Claim:  Violation of the Bane Act, California Civil Code § 52.1**

To the extent Defendants move for summary judgment on this claim on the basis that it is barred by Yount, the Court declines to rule on the merits of such an argument for reasons set forth above.  See supra Part D.  Instead, Plaintiff's Eighth Claim is "predicated on violations of the United States and California Constitutions, based on Allbee's handcuffing, towing, and searching of the vehicle."  Pl.'s Opp'n, at 15.  Of course, once again, to the extent this claim is based on the handcuffing, it fails for the same reasons already articulated.  See supra Parts A, D.

"The elements of a cause of action under the Bane Act are:  (1) defendants interfered by threat, intimidation, or coercion, or attempted to interfere by threat, intimidation, or coercion; (2) with the exercise or enjoyment by any individual of rights secured by federal or state law."  Ordonez v. Stanley, 495 F. Supp. 3d 855, 865–66 (C.D. Cal. 2020) (citing King v. State of Cal., 242 Cal. App. 4th 265, 294 (2015)); see Cal. Civ. Code § 52.1(b).  Additionally, the Bane Act requires a specific intent to violate the plaintiff's rights.  See Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018); Cornell v. City & Cnty. of S.F., 17 Cal. App. 5th 766, 801–02 (2017).  There is a two-part test for finding specific intent:  (1) "is the right at issue clearly delineated and plainly applicable under the circumstances of the case," and (2) "[d]id the defendant commit the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right?"  Id. at 803 (citation and alterations omitted) (stating that the first question is a legal determination whereas the second one is a factual determination).  "So long as those two requirements are met, specific intent can be shown 'even if the defendant did not in fact recognize the unlawfulness of his act' but instead acted in 'reckless disregard' of the constitutional right."  Sandoval, 912 F.3d at 520 (quoting Cornell, 17 Cal. App. 5th at 803).

1 Here, Defendants argue that Plaintiff cannot satisfy the specific intent requirement, in part, because "[a]s with federal courts, no state court has set forth a clearly established violation of the California Constitution under these circumstances." Defs.' Mem., at 13.  However, the "clearly established" standard applies to federal qualified immunity; under California's Bane Act, the "clearly delineated" standard governs, which is different.  Nevertheless, while "the 'clearly delineated and plainly applicable' requirement under the Bane Act is nowhere as exacting as the clearly established law requirement under § 1983, it still excludes 'vague or novel' applications of Fourth Amendment rights—even when construed at a high level of generality." Rodriguez v. Cnty. of L.A., --- F. Supp. 3d ----, 2023 WL 4010447, at *13 (C.D. Cal. June 13, 2023) (quoting Sandoval, 912 F.3d at 520).  Although "the right to be free from warrantless seizures of personal property is well-established and clearly delineated[,]" Sandoval, 912 F.3d at 520, the Court concludes that it would be a vague and novel application of the Fourth Amendment to find that Allbee violated Plaintiff's federal and state constitutional rights by impounding her vehicle on the bases of a suspended license and no vehicle insurance despite the presence of other licensed drivers. Because the first prong of specific intent is not met, the Court need not address the second prong.  Accordingly, Defendants' Motion for Summary Judgment on this claim is GRANTED.

### G. Tenth Claim:  Trespass

To the extent Defendants move for summary judgment on this claim on the basis that it is barred by Yount, the Court declines to reach the merits of such an argument for reasons set forth above.  See supra Part D.  Defendants' other arguments relating to this claim are identical to those made regarding the Sixth and Seventh Claims and thus they fail for the same reasons discussed above.  See supra Part E.  Defendants' Motion as to this claim is thus DENIED.

///

///

**H.     Twelfth Claim:  Negligence**

To the extent Defendants move for summary judgment on this claim on the basis that it is barred by Yount, the Court declines to rule on the merits of such an argument for reasons set forth above.  See supra Part D.  According to Plaintiff, her negligence claim is "based on Allbee's handcuffing, towing, and searching of the vehicle."  Pl.'s Opp'n, at 18.  To the extent this claim is based on the handcuffs, it fails again.  See supra Part A.  Finally, because Defendants' arguments related to the tow and search of Plaintiff's vehicle are identical to those previously discussed under the state law claims and thus fail for the same reasons discussed above, Defendants' Motion on that ground is DENIED.  See supra Part E.

## CONCLUSION[12]

For the foregoing reasons, Defendants' Motion for Summary Judgment or Adjudication, ECF No. 91, is GRANTED in part and DENIED in part.  Summary judgment is GRANTED in Defendants' favor on the Second, Third, Fourth, Fifth, Eighth, and Ninth Claims in their entirety.  Regarding the First Claim, summary judgment is GRANTED in Defendants' favor as to the claim against Allbee for handcuffing and the Monell claim against the County and SCSD but DENIED as to the claim against Allbee for the tow and search of the vehicle.  The Motion is DENIED as to the Sixth, Seventh, Tenth, and Twelfth Claims in their entirety.  Not later than thirty (30) days from the electronic issuance of this Memorandum and Order, the parties shall file their Joint Notice of Trial Readiness in accordance with this Court's Pretrial Scheduling Order.  See ECF No. 3, at 5–6.

IT IS SO ORDERED.

DATED:  September 25, 2023

_____
MORRISON C. ENGLAND, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[12] Defendants raised a number of objections to four documents produced by Plaintiff.  See ECF No. 94-3.  However, because the Court need not consider those documents in reaching its decision, those Objections are DENIED as moot.